## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NANCY P. ASSAD TRUST, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 18-416 |
| v. | ) ) | JURY TRIAL DEMANDED |
| HARDINGE INC., RICHARD R. BURKHART,  B. CHRISTOPHER DISANTIS, CHARLES P. DOUGHERTY, RYAN LEVENSON, MITCHELL I. QUAIN, BENJAMIN ROSENZWEIG, JAMES SILVER, and TONY TRIPENY, | ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by its undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on February 12, 2018 (the "Proposed Transaction"), pursuant to which Hardinge Inc. ("Hardinge" or the "Company") will be acquired by affiliates of Privet Fund Management LLC and Privet Fund LP (collectively, "Privet").

2.      On February 12, 2018, Hardinge's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Hardinge Holdings, LLC and Hardinge Merger Sub, Inc.  Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Hardinge's shareholders, they will receive $18.50 in cash for each share they own.

3.      On March 5, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES AND RELEVANT ENTITIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Hardinge common stock.[1]

9.      Defendant Hardinge is a New York corporation and maintains its headquarters at One Hardinge Drive, Elmira, New York 14903.  Hardinge's common stock is traded on the

---

[1] On May 16, 1995, the Company announced that it approved changing its name from "Hardinge Brothers, Inc." to "Hardinge, Inc."

NasdaqGM under the ticker symbol "HDNG."

10.     Defendant Richard R. Burkhart is a director of Hardinge.

11.     Defendant B. Christopher DiSantis is the Chairman of the Hardinge Board.

12.     Defendant Charles P. Dougherty is a director, and the President and Chief Executive Officers ("CEO") of Hardinge.

13.     Defendant Ryan Levenson is a director of Hardinge.

14.     Defendant Mitchell I. Quain is a director of Hardinge.

15.     Defendant Benjamin Rosenzweig is a director of Hardinge.

16.     Defendant James Silver is a director of Hardinge.

17.     Defendant Tony Tripeny is a director of Hardinge.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19.     Non-party Privet Fund Management LLC is a Delaware limited liability company and a private investment firm focused on investing in and partnering with small capitalization companies.  Privet Fund Management LLC is controlled by Ryan Levenson, and beneficially owns approximately 10.6% of the Company's outstanding shares.

20.     Non-party Privet Fund LP is a Delaware limited partnership that principally invests in securities of small capitalization companies for its own account.  Privet Fund LP is controlled by Privet Fund Management LLC, as general partner.

21.     Non-party Hardinge Holdings, LLC is a Delaware limited liability company that is owned by Privet Fund LP and Privet Capital Investments II, LP and managed by Privet Fund Management LLC.  Hardinge Holdings, LLC is a party to the Merger Agreement.

22.     Non-party Hardinge Merger Sub, Inc. is a New York corporation, a wholly-owned subsidiary of Hardinge Holdings, LLC, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action on behalf of itself and the other public stockholders of Hardinge (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.  As of February 6, 2018, there were approximately 12,996,148 shares of Hardinge common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the

Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on

behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

30.     Hardinge was founded in 1890.  Together with its subsidiaries, Hardinge designs,

manufactures and distributes machine tools in the Americas, Europe and Asia.  The Company

operates through two segments: Metalcutting Machine Solutions, and Aftermarket Tooling and

Accessories.  It offers advanced computer-controlled Turning Machines, Grinding Machines,

Machining Centers, System Integrations, Turnkey Solutions and post-sale support services

including repair parts, training, in-field maintenance and repairs for machine solutions.

Hardinge also engineers and supplies high precision, standard and specialty workholding

devices, and other machine tool accessories.

31.     The Company has manufacturing facilities located in China, Switzerland, Taiwan,

Germany, France, India, the United Kingdom, and the United States.  It manufactures the

majority of the products it sell.  Customers served by Hardinge include industrial fortune 500

manufacturers, OEM's and their suppliers as well as small and medium-sized independent job

shops.   The Company sells its products directly and through distributors, agents and

manufacturers' representatives.

32.     On February 12, 2018, the Individual Defendants caused the Company to enter

into the Merger Agreement with Hardinge Holdings, LLC and Hardinge Merger Sub, Inc.  If the

Proposed Transaction is approved by the Company's stockholders and completed, Hardinge

Merger Sub, Inc. will merge with and into the Company, with the Company surviving the merger

as a wholly owned subsidiary of Hardinge Holdings, LLC, and Hardinge's stockholders will

receive $18.50 per share in cash.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

33.     On March 5, 2018, defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

34.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

35.     The Proxy Statement omits material information regarding Hardinge's financial projections and the valuation analysis performed by the Company's financial advisor in connection with the Proposed Transaction, BMO Capital Markets Corp. ("BMO").

36.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

37.     The Proxy Statement states that, in support of rendering its "fairness opinion" to the Board, "BMO performed a discounted cash flow analysis to calculate the estimated present value of the unlevered free cash flows that the Company's management forecasted the Company would generate for the fiscal years 2018 through 2022 in the Projections.  See '—Special Factors—Prospective Financial Information—2018 Projections (Base Case).'"

38.     In the section of the Proxy Statement that discloses the Company's financial projections, however, defendants only disclosed the Company's projections of "adjusted free cash flow," and not the "unlevered free cash flows" that BMO actually used in its discounted

cash flow analysis. The Proxy Statement, therefore, is materially misleading in that it would cause stockholders to believe that BMO used the "adjusted free cash flow" projections in its analysis. As such, the Proxy Statement must disclose the Company's unlevered free cash flows projections for 2018 through the terminal year 2023.

39. Further, the Proxy Statement indicates that BMO performed additional discounted cash flow analyses based on two different sets of projections provided by Company management: an upside case and a downside case. The Proxy Statement similarly discloses the Company's projections of "adjusted free cash flow" for these cases, but it fails to disclose the Company's projections of unlevered free cash flows for each of the upside and downside case. The Proxy Statement must disclose these projections so that stockholders can determine for themselves which set of projections best reflects the Company's future prospects and make any necessary adjustments to BMO's discounted cash flow analysis.

40. The omission of this material information renders the Proxy Statement false and misleading, including, inter alia, the following sections of the Proxy Statement: (i) Opinion of BMO Capital Markets Corp.; and (ii) Prospective Financial Information.

41. The Proxy Statement also omits material information relating to the background leading to the Proposed Transaction. Hardinge's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

42. The Proxy Statement indicates that, throughout the sales process, the Company entered into confidentiality agreements with "[a] number of potential acquirers" that expressed an interest in a potential acquisition or other transaction with the Company, including at least three parties that were contacted as part of the "go-shop" period. The Proxy Statement, however, fails to disclose the terms of the confidentiality agreements, including whether they contain

standstill and/or "don't ask, don't waive" provisions that prohibit the counterparties from making an unsolicited superior proposal to Hardinge.  This information is particularly important to stockholders, because several parties other than Privet submitted offers for a transaction with Hardinge.

43.     The omission of this material information renders the Background of the Merger section of the Proxy Statement false and misleading.

44.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Hardinge's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Hardinge

45.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Hardinge is liable as the issuer of these statements.

47.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

48.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

49.     The omissions and false and misleading statements in the Proxy Statement are

material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

50.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

51.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

52.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

53.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Hardinge within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Hardinge and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or

cause them to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Proxy Statement.

57.     The Individual Defendants also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

58.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: April 4, 2018

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305

**HYNES KELLER & HERNANDEZ, LLC**

By: /s/ Beth A. Keller
Beth A. Keller
118 North Bedford Road, Suite 100
Mount Kisco, NY 10549
Telephone: (914) 752-3040
Facsimile: (914) 752-3041
Email: bkeller@hkh-lawfirm.com

*Attorneys for Plaintiff*